# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**COREY TRAINOR, # B-51552,**

      **Plaintiff,**

v.                                                      Case No. 17-cv-369-DRH

**ILLINOIS CORRECTIONAL INDUSTRY,**
**JOHN BALDWIN,**
**GLADYSE TAYLOR,**
**MICHAEL P. RANDLE,**
**DONALD SNYDER,**
**and UNKNOWN PARTY (John/Jane Doe**
**Wardens, Dietary Managers, and Illinois**
**Correctional Industry Superintendents),**

      **Defendants.**

## **MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

Plaintiff, currently incarcerated at Centralia Correctional Center ("Centralia"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff seeks class certification for this case. He raises an Eighth Amendment claim that Defendants knowingly served juice drinks contaminated with unsafe levels of benzene to him and other Illinois prisoners for years, endangering their health. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A .

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a

claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

**<u>The Complaint</u>**

Plaintiff names as Defendants the current and former Directors of the Illinois Department of Corrections ("IDOC"), the Illinois Correctional Industries ("ICI") program, which manufactures processed food and beverages for use by the IDOC, and a number of unknown parties (John/Jane Does). (Doc. 11, pp. 2, 5). He describes the Unknown Defendants as "wardens, dietary managers, and Illinois Correctional Industry superintendents." (Doc. 11, p. 2).

Plaintiff learned in 2016 that benzene, "a known hazardous substance," had been discovered in beverages served to prisoners in the IDOC. (Doc. 11, p. 3). According to Plaintiff, the United States Environmental Protection Agency has established 5 parts per billion as the maximum acceptable level of benzene in drinking water, and has stated that people who are exposed to benzene levels above this concentration, even for "relatively short periods of time," may develop anemia, nervous system disorders, and immune system depression. *Id.* The FDA reported in 1991 that benzene had been found in products which contain a combination of sodium benzoate and ascorbic acid, citric acid, or erthoribic acid, and called on manufacturers to take measures to impede the formation of benzene in their products. (Doc. 11, p. 4). In 2008, union members within the IDOC raised concern about benzene in drink products, but the IDOC continued to use the combination of benzoate preservatives and ascorbic, citric, or erythoribic

acid, in beverages served in prisons.

Plaintiff filed a grievance over this issue, and was told in response that he "can choose not to drink" the products. (Doc. 11, p. 4). Soon thereafter, Centralia began to use Prairie Farm juices. However, they switched back to IDOC industry juices which included among their ingredients, "sodium benzoate" and "ascorbic acid." *Id.*

Plaintiff alleges that the ICI and the John/Jane Doe ICI superintendents have known since at least 1998 about the research on the formation of benzene through the combination of sodium benzoate and ascorbic acid, yet they failed to ensure that their products did not contain benzene. (Doc. 11, p. 5, ¶¶ 17-18). ICI and its superintendents deliberately manufactured and distributed products to Illinois prisoners despite their knowledge that they would tend to contain unsafe benzene levels, placing prisoners' health at risk. *Id.* Defendants Baldwin, Randle, Snyder, and "John/Jane Doe"[1] knew about the health risks, but did nothing to address them. (Doc. 11, p. 5, ¶ 20). As a result, Plaintiff and other prisoners were involuntarily exposed to benzene through the juices served with their meals. This exposure created an unreasonable risk to Plaintiff's and other prisoners' health. *Id.* Plaintiff and other prisoners experienced one or more of the following symptoms after meals: vomiting, stomach irritation, dizziness,

---

[1] Plaintiff's allegations in ¶ 20 regarding what "John/Jane Doe" knew and failed to do are lodged collectively against all these Unknown Defendants, whom he defines as including ICI superintendents, wardens, and dietary managers. In order to facilitate the orderly progress of this litigation, the Court shall designate 3 categories of these Unknown Defendants, corresponding to Plaintiff's description. *See* FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").

sleepiness, convulsions, rapid or irregular heartbeat, and possibly cancer. (Doc. 11, p. 6).

Plaintiff claims that the Defendants' actions and inaction created an unreasonable risk to his health and the health of his fellow inmates, in violation of the Eighth Amendment. (Doc 11, pp. 6-8). The exposure to benzene may also endanger their future health. Prisoners were never informed by Defendants of the health hazards they faced from consuming the juices.

Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (Doc. 11, p. 8).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim against Illinois Correctional Industries, and the John/Jane Doe ICI Superintendents, for deliberate indifference to the present and future health risks to Plaintiff and other prisoners from consuming its juice drinks, which contain ingredients that may produce benzene;
>
> **Count 2:** Eighth Amendment claim against Baldwin, Taylor, Randle, and Snyder, for deliberate indifference to the present and future health risks to Plaintiff and other prisoners from consuming ICI-produced juice drinks, which contain ingredients that may produce

benzene;

**Count 3:** Eighth Amendment claim against the John/Jane Doe Wardens, and John/Jane Doe Dietary Managers, for deliberate indifference to the present and future health risks to Plaintiff and other prisoners from consuming ICI-produced juice drinks, which contain ingredients that may produce benzene.

Accepting Plaintiff's allegations as true, Counts 1 and 2 shall proceed for further review against some of the Defendants. Count 3 also survives review under § 1915A, but cannot go forward until one or more of the Unknown Party Defendants in that claim is identified.

### Eighth Amendment Deliberate Indifference Claims

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "An objectively sufficiently serious risk, is one that society considers so grave that to expose any

unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (internal quotations and citations omitted). Depending on the severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm. *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012).

The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Occasional instances of food or water contamination in prison will not support an Eighth Amendment deliberate indifference claim. *See, e.g., McRoy v. Aramark Correctional Servs., Inc.*, 268 Fed. App'x 479 (7th Cir. 2008) (no deliberate indifference where inmate was served undercooked chicken on one occasion, sour milk on six occasions, and spoiled sandwich meat on three occasions, where inmate was offered replacement items when available, and no further incidents occurred); *Franklin v. True*, 76 F.3d 381 (7th Cir. 1996) (unpublished disposition) (concluding that one instance of food poisoning is

insufficient to state conditions-of-confinement claim); *Hadley v. Dobucki*, 59 F.3d 173, 1995 WL 364225 (7th Cir. 1995) (unpublished disposition) (occasional "foreign objects" such as aluminum foil in prison food did not state an Eighth Amendment claim). Likewise, where the health risks from consuming allegedly tainted water are the same for prison inmates as for the general population, no Eighth Amendment claim is stated. *See Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (the Constitution does not require a confining institution "to provide a maximally safe environment, one completely free from pollution or safety hazards") (internal citation omitted); *Lieberman v. Budz*, No. 03-C-2009, 2007 WL 1810493, at *9 (N.D. Ill. June 19, 2007) (inmate had no cognizable claim for having to wash with and drink allegedly contaminated water from same source as shared by non-prison population).

However, where a prisoner's complaint indicates that prison officials were aware of a pattern of ongoing incidents where inmates were injured by contaminated food, yet did nothing to mitigate the risk, a viable deliberate indifference claim may be stated. *See Green v. Beth*, 663 F. App'x 471, 472 (7th Cir. 2016) (district court should not have dismissed claims by plaintiff who described an "ongoing" problem of injuries suffered by inmates from biting into foreign objects in the food served in jail, and lack of action by defendants).

In Plaintiff's case, he describes symptoms he suffered after consuming the allegedly tainted juice (vomiting, stomach discomfort, dizziness, sleepiness, convulsions, and irregular heartbeat). He further raises concern that the long-

term consumption of the juice containing the components that produce benzene may lead to future health problems. These symptoms and potential future health risks arguably meet the objective requirement of an Eighth Amendment claim, at least at this early pleading stage.

The Court was unable to find any cases discussing the health risks of consuming benzene or the sodium benzoate/ascorbic acid combination in drinks. Courts have rejected claims analogous to this one, based on prisoners' unwitting consumption of drinks sweetened with saccharine, a possible carcinogen, because no proof existed that the substance was detrimental to human health, and no present injury had been alleged. *Tripp v. Carter*, No. 99-C-3304, 1999 WL 966099, at *2-3 (N.D. Ill. Oct. 13, 1999) (collecting cases). In Plaintiff's case, however, he alleges that there is documentation of harm and risks of harm to humans from the substances in the prison juice products. He claims to have suffered physical symptoms after consuming the juice, and raises a claim for possible future harm due to long-term exposure. Furthermore, he claims that for years, he had no opportunity to avoid the risk by choosing not to consume the products, because he had no knowledge of the risk. At this early stage of the case, therefore, it would be inappropriate to conclude that the ICI-produced juice products did not pose an objectively serious risk of harm to Plaintiff.

The remaining question is whether any of the Defendants had the requisite subjective knowledge of the risk to inmates' health from these products.

Awareness of such a risk is necessary to support a claim for deliberate indifference based on a Defendant's failure to take any action to mitigate the risk.

### Count 1 – ICI and ICI Superintendents

According to Plaintiff, the ICI and its superintendents have known about the danger from the possible formation of benzene when sodium benzoate and ascorbic acid are combined in products, since approximately 1998. He claims that despite this knowledge, they did not take remedial steps to ensure their products were not dangerous. (Doc. 11, p. 5, ¶¶ 17-19).[2] Instead, they continued to manufacture and distribute these products to prisoners for many years. These allegations support an Eighth Amendment claim at this stage of the case. However, not all of these Defendants are amenable to suit in a civil rights action.

The Illinois Correctional Industries ("ICI") is an entity of state government affiliated with the IDOC, created by legislative action. ICI employs prison inmates and produces goods that are used in the state prisons, and are sold to other state agencies and to the public. *See* www.icicatalog.illinois.gov (FAQ information). State agencies and divisions of state government may not be sued for damages in a federal civil rights action brought under § 1983. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages).

---

[2] Plaintiff's allegations in these 3 paragraphs relate specifically to ICI. Therefore, the Court understands Plaintiff to be referring to the John/Jane Doe ICI superintendents here, and not to the other John/Jane Doe parties (the wardens and dietary managers).

Accordingly, Plaintiff may not maintain a claim for money damages against ICI in connection with his Eighth Amendment claims.

Plaintiff does not seek only money damages, however. He also requests prospective injunctive relief "to seize the manufacturing of the dangerous substances." (Doc. 11, p. 8). Under the doctrine of *Ex parte Young*, a plaintiff may file "suit[ ] against state *officials* seeking prospective equitable relief for ongoing violations of federal law . . . ." *Marie O. v. Edgar,* 131 F.3d 610, 615 (7th Cir. 1997) (emphasis added); *see Ex parte Young,* 209 U.S. 123, 159-60 (1908); *Ind. Prot. and Advocacy Servs. v. Ind. Family and Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010). If Plaintiff ultimately prevails on his claims that ICI officials knowingly produced and distributed dangerous products for consumption by inmates, he could be entitled to injunctive relief, which is not barred by the Eleventh Amendment. For this reason, Plaintiff's claim for injunctive relief may go forward against the Unknown Defendant ICI superintendents (the relevant state officials) in their official capacity. For clarity, these Defendants shall be designated as Unknown Party #1 (John/Jane Doe ICI superintendents).[3] An ICI superintendent may also be held personally liable if he or she violated Plaintiff's Eighth Amendment rights.

Accordingly, all claims against Illinois Correctional Industries shall be dismissed from the action with prejudice, and ICI shall be dismissed as a

---

[3] To facilitate the orderly progress of this action going forward, the Clerk shall be directed to rename the Unknown Party Defendants as follows: Unknown Party #1 (John/Jane Doe ICI superintendents); Unknown Party #2 (John/Jane Doe wardens); and Unknown Party #3 (John/Jane Doe dietary managers). *See* FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").

Defendant.  **Count 1** shall proceed only against Unknown Party #1 (John/Jane Doe ICI superintendents).

## Count 2 – IDOC Directors

Plaintiff seeks to hold current IDOC Director Baldwin, as well as former IDOC Directors Taylor, Randle, and Snyder, liable for deliberate indifference to a known risk of harm from benzene in the juice drinks served in IDOC prisons.  He claims that Baldwin, Randle, and Snyder knew about the risks posed by the possibility of benzene in the drinks, but did nothing to mitigate the risks.  (Doc. 11, p. 5).  He omitted Taylor from this paragraph, and does not mention her elsewhere in the Complaint.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."  *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted).  In order to state a claim against a defendant, a plaintiff must describe what each named defendant did (or failed to do), that violated the plaintiff's constitutional rights.  Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him or her.  Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Plaintiff has sufficiently alleged that Baldwin, Randle, and Snyder knew about the potential danger to inmates from consuming juice containing chemicals that could produce benzene, yet took no action. (Doc. 11, p. 5). He has thus stated a claim against these Defendants for potential liability in their individual capacities. No such allegation is included against Taylor, however, and Plaintiff's conclusory allegations against the Defendants collectively do not provide factual support to indicate that Taylor had the requisite knowledge to suggest deliberate indifference on her part. (Doc. 11, pp. 6-7). Taylor shall thus be dismissed from the action at this time without prejudice.

Plaintiff also sues each of these Directors and former Directors in their official capacity. Only Baldwin, however, still serves as a state official. As discussed under Count 1, a civil rights claim for damages against a state official in his/her official capacity is barred by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). A claim for injunctive relief, however, is not prohibited.

Accordingly, Plaintiff may proceed with the claim in **Count 2** for injunctive relief against current IDOC Director Baldwin, in his official capacity. All other official capacity claims against Randle, Snyder, and Taylor are dismissed. The damages claim in **Count 2** shall also proceed against Baldwin, Randle, and Snyder in their individual capacities.

**Count 3 – Wardens and Dietary Managers**

Plaintiff does not include any particularized factual allegations regarding

the wardens and dietary managers. Instead, he claims generally that "John/Jane Doe knew about the concerns and risks, but did nothing to rectify the situation," which is the same allegation he makes against Baldwin, Randle, and Snyder in the same sentence. (Doc. 11, p. 5, ¶ 20). Plaintiff defines "John/Jane Doe" to include wardens, dietary managers, and the ICI superintendents. Construing the Complaint liberally, Plaintiff has met the basic pleading requirements to state a claim against the wardens and dietary managers at this early stage. However, as noted above, in order to clarify the claims against each class of Unknown Defendants going forward, the Court shall designate these parties as Unknown Party #2 (John/Jane Doe wardens) and Unknown Party #3 (John/Jane Doe dietary managers). *See* Fed. R. Civ. P. 21. Of course, until Plaintiff identifies one or more of these individuals by name and submits a proper motion to substitute party, no warden or dietary manager can be served with process or required to respond to this action.

At this time, **Count 3** survives review under § 1915A.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 1 against Defendants Unknown Party #1 (John/Jane Doe ICI superintendents). In this case, the current ICI superintendent may be served by directing service to him/her under his/her official title. However, any previous ICI superintendents must be identified with particularity before service of the Complaint can be made on them.

Count 3 also survives dismissal, but the Complaint does not provide sufficient information to determine which of the Unknown Party #2 (John/Jane Doe wardens) or Unknown Party #3 (John/Jane Doe dietary managers), at which institutions, may be implicated in this claim. Accordingly no service shall be ordered for these 2 classes of John/Jane Doe Defendants until Plaintiff identifies the individual Defendant(s) by name.

Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, IDOC Director Baldwin is already named as a Defendant, and he shall be responsible for responding to discovery aimed at identifying these unknown defendants. As well, discovery may be directed to the current ICI Superintendent in his/her official capacity. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Defendants Unknown Party #1 (John/Jane Doe ICI superintendents), Unknown Party #2 (John/Jane Doe wardens), and/or Unknown Party #3 (John/Jane Doe dietary managers) are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Pending Motion

Plaintiff's motion for class certification (Doc. 9) shall be referred to the United States Magistrate Judge for further consideration.

### Disposition

The Clerk is **DIRECTED** to designate the Unknown Party Defendants as follows: **UNKNOWN PARTY #1 (John/Jane Doe ICI superintendents)**; **UNKNOWN PARTY #2 (John/Jane Doe wardens)**; and **UNKNOWN PARTY #3 (John/Jane Doe dietary managers)**.

Defendant **ILLINOIS CORRECTIONAL INDUSTRY** is **DISMISSED** from this action with prejudice. Defendant **TAYLOR** is **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **BALDWIN, RANDLE, SNYDER,** and **SUPERINTENDENT of the ILLINOIS CORRECTIONAL INDUSTRIES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Other than the notice to be sent to the current Superintendent of the Illinois Correctional Industries as ordered above, service shall not be made on Defendants **UNKNOWN PARTY #1 (John/Jane Doe ICI superintendents)**; **UNKNOWN PARTY #2 (John/Jane Doe wardens)**; or **UNKNOWN PARTY #3 (John/Jane Doe dietary managers)** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**THIS 14TH DAY OF JUNE, 2017.**

Digitally signed by Judge David R. Herndon
Date: 2017.06.14 08:16:46 -05'00'

**UNITED STATES DISTRICT JUDGE**